UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 1:21-cr-508 (BAH) |
| : | |
| LANDON BRYCE MITCHELL, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION TO REDUCE SENTENCE UNDER U.S.S.G. § 4A1.1**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this response in opposition to defendant Landon Bryce Mitchell's Motion to Reduce Sentence based on the recent amendment to U.S.S.G. § 4A1.1. ECF No. 153. While the government concedes that Section 4A1.1 applies, the Court lacks jurisdiction to issue an order reducing the defendant's sentence while his appeal is pending. Moreover, under the 3553(a) factors, the Court should not exercise its discretion to reduce Mitchell's 27-month sentence.

**I.     BACKGROUND**

Landon Bryce Mitchell was one of the very few rioters who breached the Senate Chamber and ascended the dais during the January 6, 2021 attack on the United States Capitol. That violent attack interrupted the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.

Mitchell planned for conflict in advance of January 6. Leading up to that day, Mitchell made a number of posts on social media, including:

- "If biden wins, civil war it shall be";

1

- "It[']s flat out treason what they're pulling and the law doesn't apply to them. So we need to become the law";

- "when they invalidated my vote with all their cheating, they invalidated my consent to be governed by them!";

- "if we don't fight now there is no point in ever voting again"; and

- "Joe Biden IS NOT MY PRESIDENT . . . Better believe I'll be in DC Jan. 6th! Whose [sic] coming with me?"

*See* ECF 75 at 13-17.

On January 6, 2021, Mitchell and his co-defendant, Luke Wessley Bender, traveled together to the former President's "Stop the Steal" rally, then marched to the Capitol and made their way onto restricted Capitol grounds. *See id.* As they arrived near the Capitol Building, Mitchell and Bender paused for a picture. *See id.*

Mitchell and Bender then unlawfully entered the Capitol Building, went into the Rotunda, made their way down several hallways, and eventually walked into the Senate Chamber and onto the Senate Floor. *See id.* They remained on the Senate Floor together for approximately five minutes until a group of Capitol Police officers arrived and directed them to leave. *See id.* While on the Senate Floor, Mitchell and Bender leafed through and examined documents on Senators' desks, ascended the Senate dais, and posed for pictures, including ones taken next to the self-proclaimed "QAnon Shaman," Jacob Chansley. *See id.* Among the attachments to Mitchell's Facebook messages include photographs and videos of Mitchell on the Senate Floor on January 6, 2021. *See id.*

As Mitchell explained later on January 6, he and Bender "climbed the scaffolding up 3 stories, [and] pushed back the police and breached the doors!" *See id.* Mitchell stated in Facebook

messages to his friends and family members that he "Breached the Capitol today," was "one [of] the very first in," and "one of the first to Breach." *See id.*

Following January 6, 2021, Mitchell continued voicing pride in his actions, including stating that: "The breach wasn[']t so much about Trump as it was about how much we the people are fed up with how our government is mistreating us and lying to us[,]" and "This election was rigged, blatantly. *See id.* And here they sit laughing at us, the citizens, thinking we won[']t do anything about it but take it.  Wrong." On January 31, 2021, he stated on Facebook that "the people who breached the capitol were heroes and patriots." *See id.*

On December 8, 2021, a federal grand jury returned an Indictment charging Mitchell with six offenses: Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512(c)(2) (Count One); Entering or Remaining in a Restricted Building, in violation of 18 U.S.C. § 1752(a)(1) (Count Two); Disorderly or Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count Three); Entering or Remaining on the Floor of Congress, in violation of 40 U.S.C. § 5104(e)(2)(A) (Count Four); Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count Five); and Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count Six). *See* 21-cr-00717-BAH, ECF No. 18. On December 7, 2022, Mitchell was convicted of these offenses after a stipulated trial.  *See* ECF No. 95.

During the pendency of this case, Mitchell did not adhere to the conditions of his release. Specifically, Mitchell tested positive for amphetamines on at least four occasions, failed to check in with his probation officer on twelve occasions, failed to attend substance use treatment as directed, and was arrested and charged in Texas with the possession of a controlled substance, leading Probation to request that he be removed from supervision on three occasions.  Mitchell's

compliance with the Court's conditions were so poor that the Court essentially placed him on house arrest, only denying pre-trial detention so that he could continue to attend drug treatment and counseling.

Prior to sentencing, Mitchell had two felony convictions which counted toward his criminal history score (along with other convictions that did not count toward his score), giving him six criminal history points.[1] *See* ECF No. 142 (Sentc'g Tr.) at 16:21-17:16. Then, because Mitchell committed his crimes from January 6, 2021 while serving a term of probation, two additional status points were added to his criminal history score, resulting in a total of eight criminal history points and a Criminal History Category of IV. *Id*.

Relevant to the instant motion, Mitchell urged at sentencing that the Court should vary downward from the applicable Sentencing Guidelines due to the then-proposed amendment to § 4A1.1, which eliminates status points for defendants with six or less criminal history points and if applied would reduce his criminal history score to 6 and criminal history category to III. *Id.* at 96:16-97:13. The Court declined to vary downward on the basis of the anticipated enactment of U.S.S.G. § 4E1.1(e), explaining:

> No matter what the commission does – and one could say that adding the two points for committing an offense while on supervision for another conviction is indicative of lack of respect for the law that would warrant some consideration by a sentencing judge and some recognition of the lack of respect for the law by committing criminal offense conduct while on supervision for another offense warrants some increase in a sentence, which the two points cabins to only two points.

*Id*. at 99:4-12.

The Court then imposed a within-Guidelines sentence to reflect the nature and seriousness of Mitchell's offenses, the need for general and specific deterrence, and that at only 32, he already

---

[1] He also committed violations of his probationary periods in those cases numerous times, although the violations did not affect his criminal history score.

had attained a serious criminal history. *See* ECF No. 142 (Sentc'g Tr.) at 16:21-17:16. The Court explained that a term of imprisonment was warranted because Mitchell preplanned his crimes (as reflected on social media), anticipated violence prior to January 6, 2021, breached the Senate Floor and ascended the dais, and celebrated his conduct and that of others in the hours following his breach of the Capitol. *See id.* at 13-17. Accordingly, on April 20, 2023, Mitchell was sentenced to the following terms of imprisonment to run concurrently: 27 months on Count One; 12 months on each of Counts Two and Three; and 6 months on each of Counts Four, Five, and Six. ECF No. 134. Mitchell's Virginia probation for burglary and larceny convictions was revoked in Arlington County the next day and he was sentenced there to 8 months' imprisonment.

Mitchell filed a notice of appeal on May 1, 2023. *United States v. Mitchell*, No. 23-3060 (D.C. Cir.). Following his unopposed motions to extend the time to file his opening brief, the U.S. Court of Appeals for the District of Columbia suspended the briefing schedule and issued an order on January 30, 2024, holding the appeal in abeyance pending resolution of *United States v. Fischer*, cert. granted, No. 23-5572 (oral argument scheduled for April 7, 2023).

On November 1, 2023, Mitchell self-surrendered and began serving his 27-month sentence in this case. ECF No. 148 at 5. Notably, his federal incarceration has not been incident-free. According to Bureau of Prisons records, Mitchell was sanctioned for possessing a dangerous weapon on December 21, 2023, after admitting to the infraction on February 8, 2024. *See* Ex. 1.

## II.   RETROACTIVE APPLICATION OF AMENDMENT TO U.S.S.G. § 4A1.1

"The filing of a notice of appeal is an event of jurisdictional significance" because "it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58, (1982). "The district court does not [then] regain jurisdiction over those issues until the

court of appeals issues its mandate." *United States v. DeFries*, 129 F.3d 1293, 1302 (D.C. Cir. 1997). While there are exceptions to this jurisdictional rule, "[a] motion to modify a prison term pursuant to section 3582(c) is not one of the two established exceptions to the divestiture of a district court's jurisdiction over a matter pending appeal." *United States v. Johnson*, 464 F. Supp. 3d 22, 34 n. 7 (D.D.C. 2020).

While a motion for relief under 18 U.S.C. § 3582(c) may not be granted by a district court while an appeal is pending, pursuant to Fed. R. Crim. P. 37(a), "the court may: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." That is, while a court may review the merits of a defendant's timely motion under 18 U.S.C. § 3582(c), it cannot order a reduction in a defendant's sentence while an appeal is pending. *See, e.g.*, *United States v. Jackson*, 468 F. Supp. 3d 59, 65 (D.D.C. 2020), aff'd, 26 F.4th 994 (D.C. Cir. 2022) (reviewing and denying defendant's motion for relief under 18 U.S.C. § 3582(c)(1)(A) while an appeal was pending).

Mitchell filed an appeal in this case on May 1, 2023. *United States v. Mitchell*, No. 23-3060 (D.C. Cir.). Thus, although the court may take one of the three steps outlined in Rule 37(a), it cannot order a reduction in Mitchell's sentence until his appeal is resolved.

### III.   RETROACTIVE APPLICATION OF AMENDMENT TO U.S.S.G. § 4A1.1

The Court has previously considered a defendant's motion to reduce their sentence pursuant to the U.S.S.G. § 4A1.1 amendment. *See United State v. Otunyo*, 2024 WL 50975 (D.D.C. Jan. 4, 2024). As the Court explained,

> Part A of Amendment 821 amended U.S.S.G. § 4A1.1, which governs the calculation of a defendant's Criminal History Category, by striking subsection (d), which read "[a]dd 2 points if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release,

6

> imprisonment, work release, or escape status," redesignating subsection (e) as subsection (d), and inserting a new subsection (e). *See* Amendment 821, U.S. Sentencing Comm'n, https://www.ussc.gov/guidelines/amendment/821. The new subsection (e) provides:
>
>> Add 1 point if the defendant (1) receives 7 or more points under subsections (a) through (d), and (2) committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.
>
> U.S.S.G. § 4A1.1(e). Put differently, before Amendment 821, a defendant with six or fewer criminal history points who committed the offense while under a criminal justice sentence, like any other defendant, would have received two extra criminal history points. After Amendment 821, the same defendant would receive no extra points. The Sentencing Commission announced, on August 24, 2023, that Amendment 821 applies retroactively and further directed that no defendant could be ordered released based on this amendment prior to February 1, 2024. *See* U.S.S.G. § 1B1.10(e)(2)….
>
> When implementing § 3582(c)(2) in practice, district courts are instructed to follow a two-step approach: First, a court "determin[es] the amended guideline range that would have been applicable to defendant had the relevant amendment been in effect at the time of the initial sentencing" by substituting only the amendments covered by U.S.S.G. § 1B1.10 and "leav[ing] all other guideline application decisions unaffected." *Id*. at 827 (*quoting* U.S.S.G. § 1B1.10(b)(1)). Second, a court "consider[s] any applicable § 3553(a) factors and determine[s] whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case." *Id*. Reference to § 3553(a) "cannot serve to transform" the "circumscribed" § 3582(c)(2) proceedings into "plenary resentencing proceedings." *Id.*

*Id.* at*2-*3.

Accordingly, a reduction pursuant to U.S.S.G. § 1B1.10 is not mandatory. Instead, a "court *may* reduce the term of imprisonment, after considering the factors set forth in section 3553(a)." 18 U.S.C. § 3582(c)(2) (emphasis added); *see also* U.S.S.G. § 1B1.10 app. note 1(B)(i), (ii) (before reducing a defendant's sentence, the court must "consider the factors set forth in 18 U.S.C. § 3553(a) in determining … whether a reduction in the defendant's term of imprisonment is warranted" as well as "the extent of such a reduction."); *see also id.* Background ("The

7

authorization of such a discretionary reduction ... does not entitle a defendant to a reduced term of imprisonment as a matter of right.").

In particular, the Court must consider public safety considerations, and may consider information regarding the post-sentencing conduct or situation of the defendant, whether positive or negative. *See*, *e.g.*, *United States v. Darden*, 910 F.3d 1064, 1068 (8th Cir. 2018). Section 1B1.10 application note 1(B)(ii) directs that "[t]he court shall consider the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment." Application note 1(B)(iii) further directs that "[t]he court may consider post-sentencing conduct of the defendant that occurred after the imposition of the original term of imprisonment." That means the court may, but is not required, to consider the defendant's post-sentencing rehabilitation, if any. *See United States v. Rodriguez-Rosado*, 909 F.3d 472, 481 (1st Cir. 2018); *United States v. Banderas*, 858 F.3d 1147, 1150 (8th Cir. 2017). Such conduct would include social media posts and other statements relating to the Capitol riot on January 6, 2021.

If the Court decides in its discretion to grant a reduction in sentence, it generally may not reduce the term of imprisonment to a term that is less than the minimum of the new guideline range. U.S.S.G. § 1B1.10(b)(2)(A). Thus, the Court may not reduce the sentence below the range provided by the amended guideline, here 21 months' imprisonment, and "in no event may the reduced term of imprisonment be less than the term of imprisonment the defendant has already served." U.S.S.G. § 1B1.10(b)(2)(C).

IV. **NO SENTENCING REDUCTION IS WARRANTED**

"The grant of authority to the district court to reduce a term of imprisonment is unambiguously discretionary," even when the guideline range is actually reduced. *United States v. Vautier*, 144 F.3d 756, 760 (11th Cir. 1998). A district court has "substantial discretion" in

8

deciding whether to reduce a sentence. *United States v. Young*, 555 F.3d 611, 614 (7th Cir. 2009). Accordingly, many courts have denied sentence reductions even in situations where guideline amendments lowered the sentencing ranges. *See, e.g.*, *United States v. Strand*, 21-cr-085 (CRC), ECF No. 150 at 7-8; *United States v. Wilson*, 716 F.3d 50, 53 (2d Cir. 2013).

Here, the Section 3553(a) factors counsel against granting a sentence reduction. To start, while U.S.S.G. § 4A1.1(e) reduces Mitchell's criminal history points from 8 to 6, taking him from the middle of Criminal History Category IV to the very top of Criminal History Category III, the reduction *does not* move the previously imposed 27-month sentence outside the applicable Guidelines range. That is, Mitchell's new Guidelines range is 21 to 27 months' imprisonment, rather than the 27 to 33 month range calculated at his sentencing. *See* ECF No. 153 at 3. And when the Court sentenced the defendant, it applied the § 3553(a) factors and determined that a 27-month term was sufficient, but not greater than necessary, to comply with the statute's purposes. ECF No. 142 at 101:15-22. The Court specifically found that a 27-month term of imprisonment was warranted under § 3553(a) because Mitchell preplanned his crimes (as reflected on social media), anticipated violence prior to January 6, 2021, breached the Senate Floor and ascended the dais, and celebrated his conduct and that of others in the hours following his breach of the Capitol. The Court considered Mitchell's criminal history, the importance of specifically deterring Mitchell (who repeatedly violated the terms of his release), and the overriding goal of general deterrence in January 6 cases. *See generally* ECF No. 142 (Sentc'g Tr.).

In so doing, the Court considered the possibility that § 4A1.1 would be amended and explained that the underlying conduct which animated the addition of two levels—committing an offense while under a term of supervision—reflected a lack of respect for the law that is directly relevant to the §3553(a) analysis and might warrant some increase in a defendant's sentence. ECF

9

No. 142 at 99:4-12. To be clear, the fact that Mitchell committed his crimes while under a term of probation makes his history and characteristics different than otherwise similarly situated individuals like his co-defendant, Luke Bender, who were not violating the terms of supervision when they committed crimes on January 6.

Moreover, Mitchell's repeated and unabating failure to comply with this Court's conditions, and his violation of Bureau of Prisons rules soon after federal incarceration, counsels that a reduced sentence is inappropriate. The same lack of respect for the law shown by committing crimes while under supervision can be seen through his violation of this Court's and the BOP's rules. He plainly has not been rehabilitated since his arrest.

In addition, the § 3553(a) factors counsel against a sentence reduction for the reason that the January 6 riot was a violent attack that threatened the lives of legislators and their staff, interrupted of the certification of the 2020 Electoral College vote count, did irrevocable harm to our nation's tradition of the peaceful transfer of power, caused more than $2.9 million in losses, and injured more than one hundred police officers, causing serious bodily injury in many cases. Every rioter, whether or not they personally engaged in violence or personally threatened violence, contributed to this harm. *See, e.g., United States v. Rivera*, 21-cr-60 (CKK), ECF No. 62 at 13 ("Just as heavy rains cause a flood in a field, each individual raindrop itself contributes to that flood. Only when all of the floodwaters subside is order restored to the field. The same idea applies in these circumstances. Many rioters collectively disrupted congressional proceedings and each individual rioters contributed to that disruption. Because [defendant's] presence and conduct in part caused the continued interruption to Congressional proceedings, the court concludes that [the defendant] in fact impeded or disrupted the orderly conduct of Government business or official functions").

10

Thus, due to the § 3553(a) factors that the Court already determined called for a 27-month sentence, the unique nature of the January 6 riot, the harms caused by the January 6 riot, and the significant need to deter future mob violence, the government submits that even if the Court finds that the recent amendment to § 4A1.1 applies, the Court should nevertheless deny a sentence reduction and maintain its within-Guidelines sentence of 27 months. Such treatment would be appropriate as to Landon Bryce Mitchell and recognize the unique nature of the criminal events of January 6, 2021, coupled with the overwhelming need to ensure future deterrence.

## CONCLUSION

For these reasons, the government respectfully requests the Court deny Mitchell's motion.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: */s/ Samantha R. Miller*
SAMANTHA R. MILLER
Assistant United States Attorney
New York Bar No. 5342175
United States Attorney's Office
For the District of Columbia
601 D Street, NW 20001
Samantha.Miller@usdoj.gov

*/s/ Jordan A. Konig*
JORDAN A. KONIG
Supervisory Trial Attorney, Tax Division,
U.S. Department of Justice
Detailed to the U.S. Attorney's Office
P.O. Box 55, Washington, D.C.  20044
Tel.: 202-305-7917
Jordan.A.Konig@usdoj.gov