IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : :  : No. 21-cr-508-01-BAH  : |
| v. | : : |
| LUKE WESSLEY BENDER, | : : |
| *Defendant.* | : : |

**NOTICE OF FILING DEFENDANT'S RESPONSE
TO THE COURT'S SEPTEMBER 26, 2024 MINUTE ORDER**

Defendant Luke Wessley Bender respectfully submits the following response to the three issues identified in the Court's September 26, 2024 Minute Order.

**I.    THE MANDATE FROM THE DISTRICT OF COLUMBIA CIRCUIT PERMITS, ON REMAND, RESENTENCING ON MR. BENDER'S NON-VACATED MISDEMEANOR CONVICTIONS ON COUNTS TWO THROUGH SIX OF THE INDICTMENT, CONSISTENT WITH THE DISTRICT OF COLUMBIA CIRCUIT'S RULES REGARDING THE SCOPE OF A DISTRICT COURT'S RESENTENCING AUTHORITY UNDER A GENERAL REMAND ORDER.**

The Court first asked "[w]hether the mandate from the D.C. Circuit permits, on remand, *de novo* resentencing on defendant's non-vacated misdemeanor convictions on Counts 2 through 6 of the Indictment." *See* Sept. 26, 2024 Min. Order. Mr. Bender submits that, rather than a *de novo* resentencing, the mandate permits resentencing consistent with the D.C. Circuit's rules regarding the scope of a district court's resentencing authority under a general remand order.

The D.C. Circuit has recognized that "[v]acatur is one way a district court, on remand, can reconfigure a sentencing plan, . . . but does not, by itself, 'permit[ ] [the court] to reconsider issues that were not in any way related to this court's vacatur of the' count or enhancement." *United States v. Hunter*, 809 F.3d 677, 681 n.3 (D.C. Cir. 2016) (citing *United States v. Blackson*, 709

F.3d 36, 41 (D.C. Cir. 2013)). Instead, the D.C. Circuit has certain "rules regarding the scope of a district court's resentencing authority under a remand order that . . . contains no express instructions regarding which issues the district court may consider." *Blackson*, 709 F.3d at 40.

First, when the D.C. Circuit "vacates one count of a multi-count conviction, the district court on remand should begin by determining whether that count affected the overall sentence and, if so, should reconsider the original sentence it imposed." *Id.* Second, "the district court may also consider 'such new arguments or new facts as are made newly relevant by the court of appeals' decision—whether by the reasoning or by the result.'" *Id.* (citing *United States v. Whren*, 111 F.3d 956, 960 (D.C. Cir. 1997)). Third, "the district court is further authorized to consider facts that did not exist at the time of the original sentencing: for example, in *United States v. Rhodes* [the D.C. Circuit] held that the district court could consider rehabilitation efforts that the defendant had undertaken since receiving his original sentence." *Id.* (citing *Rhodes*, 145 F.3d 1375, 1377-78 (D.C. Cir. 1998)).

Here, the D.C. Circuit ordered that Mr. Bender's "conviction under 18 U.S.C. § 1512(c)(2) be vacated and the case be remanded *for further proceedings*." D.E. 166-1 (emphasis added). Consistent with the above precedent, although the mandate did not provide "express instructions" for resentencing, this Court still has resentencing authority, in accordance with the foregoing rules, under the remand order. *See Blackson*, 709 F.3d at 38-39, 44 (concluding that the district court did not exceed its authority by conducting resentencing consistent with the above-detailed rules, where the panel's remand order stated, in relevant part, "We vacate Blackson's judgment on Count 31 and remand to the district court *for further proceedings* consistent with this opinion").

Specifically, during the "further proceedings" on remand, this Court should "determin[e] whether [Count One] affected the overall sentence and, if so, should reconsider the original

2

sentence it imposed." *See id.* at 40. Because Count One clearly affected Mr. Bender's overall sentence, the Court is required to reconsider its original sentence. *See* D.E. 161 at 11 (acknowledging that, if Mr. Bender's conviction under § 1512(c)(2) were vacated, he would receive a "likely reduced sentence" of "12 months' incarceration, the statutory maximum and within the advisory guideline sentencing ranges for the Class A misdemeanors in Counts Two and Three"). This Court "may also consider 'such new arguments or new facts as are made newly relevant by the court of appeals' decision—whether by the reasoning or by the result.'" *See Blackson*, 709 F.3d at 40 (citing *Whren*, 111 F.3d at 960). Finally, this Court may "consider facts that did not exist at the time of the original sentencing," such as the significant rehabilitation efforts Mr. Bender has undertaken since receiving his original sentence. *See id.*

For all of these reasons, a resentencing consistent with D.C. Circuit precedent does not deviate from the mandate in this case or run afoul of the mandate rule.

II. **MERELY AMENDING THE JUDGMENT TO REFLECT THE VACATUR OF MR. BENDER'S CONVICTION ON COUNT ONE, WITH ASSOCIATED ADJUSTMENT IN HIS TERM OF INCARCERATION AND SUPERVISED RELEASE, WOULD NOT COMPLY WITH THE DISTRICT OF COLUMBIA CIRCUIT'S MANDATE.**

As set forth above, although the D.C. Circuit's mandate does not instruct this Court to conduct a *de novo* resentencing, the instruction to vacate Mr. Bender's conviction on Count One and conduct "further proceedings" on remand does require the Court to conduct resentencing consistent with the guidance set forth in *Blackson* and related precedent. In other words, this Court is still required to reconsider its original sentence, taking into account new arguments made relevant by the D.C. Circuit's decision as well as facts that did not exist at the time of the original sentencing. *See Blackson*, 709 F.3d at 40. Accordingly, merely amending the Judgment to reflect the vacatur of Mr. Bender's conviction on Count One, with associated adjustment in his term of

incarceration and supervised release, would not comply with the D.C. Circuit's mandate.

### III. A NEW SENTENCING FALLS WITHIN THE SCOPE OF THE DISTRICT OF COLUMBIA CIRCUIT'S MANDATE AND IS NECESSARY TO DETERMINE THE PROPER SENTENCE FOR MR. BENDER'S REMAINING CONVICTIONS.

Although only one count of Mr. Bender's convictions has been vacated, a new sentencing is nonetheless required to determine the proper sentence for Mr. Bender's remaining misdemeanor convictions. For the reasons that follow, Mr. Bender submits that a sentence of time served for his remaining misdemeanor convictions is sufficient but not greater than necessary to achieve the goals of sentencing.

#### A. Procedural Background

Mr. Bender was convicted, following a stipulated bench trial, on December 7, 2022, of a single felony offense for Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512(c)(2) (Count One), and five misdemeanor offenses, including Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count Two); Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count Three); Entering and Remaining on the Floor of Congress, in violation of 40 U.S.C. § 5104(e)(2)(A) (Count Four); Disorderly Conduct in a Capitol Building or Grounds, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count Five); and Parading, Demonstrating, or Picketing in a Capitol Building, in violation of § 5104(e)(2)(G) (Count Six). *See* D.E. 132.

Mr. Bender faced a maximum sentence of twenty years on Count One; twelve months per count on Counts Two and Three; and six months per count on Counts Four, Five, and Six. At the sentencing hearing on April 20, 2023, the Court sentenced Mr. Bender to a term of twenty-one months with the Bureau of Prisons ("BOP"), to consist of concurrent terms of twenty-one months as to Count One; twelve months as to Counts Two and Three; and six months as to Counts Four,

4

Five, and Six. *See* Sentencing Tr. at 116:19-117:1. In addition, the Court imposed a concurrent thirty-six-month term of supervised release, to consist of thirty-six months as to Count One, and twelve months as to Counts Two and Three. *Id.* at 117:2-5. The Court allowed Mr. Bender to remain out of prison pending surrender, *id.* at 132:12-13, and he self-surrendered to BOP custody on July 6, 2023.

Having noted his appeal on April 25, 2023, *see* D.E. 138, Mr. Bender filed his appellate brief on September 5, 2023, raising challenges to his sole felony conviction under 18 U.S.C. § 1512(c)(2) and to his sentence. After the D.C. Circuit granted the Government's second motion to stay the appeal, Mr. Bender filed a motion in this Court, seeking release pending appeal. *See* D.E. 146. On March 6, 2024, the Court granted the motion. *See* D.E. 161. As opined by the Court, if Mr. Bender's conviction under § 1512(c)(2) were vacated, his "'likely reduced sentence' would be 12 months' incarceration, the statutory maximum and within the advisory guideline sentencing ranges for the Class A misdemeanors in Counts Two and Three." *Id.* at 11. Accordingly, the Court ordered Mr. Bender released when he had "served twelve months in prison," setting a prospective release date of July 7, 2024. *Id.* at 12-13. Pursuant to the Court's ruling, Mr. Bender was released from BOP custody on July 5, 2024, after serving two days less than a full twelve months of actual time.[1]

    **B.**    **Argument**

At the time of his original sentencing, the Court observed that Mr. Bender "seem[ed] to have matured and grown up a lot over the last few years since his arrest in this case." Sent. Tr. at 109:21-23. As further expressed by the Court, Mr. Bender "got his life back on track" and "has

---

[1] As the BOP facility did not permit release of a prisoner on the weekend, Mr. Bender was released on the Friday before the twelve-month mark which would have ended on Sunday.

goals in his life." *Id.* at 110:11-14. The Court deemed Mr. Bender's apology and remorse to be "very genuine," opining that Mr. Bender had "reconsidered" his stance on the events of January 6, 2021 and "become [a] much more critical consumer[] of both the news and the things that [he] see[s] around [him]." *Id.* at 111:2-4, 111:11-13.

Thereafter, in deciding to release Mr. Bender pending his appeal, the Court found, by clear and convincing evidence, that Mr. Bender was not likely to flee or pose a danger to any other person or the community. D.E. 161, at 6. The Court noted that "'[f]rom his arrest, until the day he reported to prison, Mr. Bender was in 100 percent compliance with the Pretrial Services Agency's High Intensity Supervision Program, to include Global Position Systems ("GPS") monitoring, without any GPS or curfew non-compliance.'" *Id.* at 6-7 (citing D.E. 146 at 4). The Court further credited Mr. Bender for "earn[ing] the BOP report of being a 'model inmate' since self-surrendering." *Id.* at 7.

In the almost year and a half since his sentencing, Mr. Bender has only continued to mature and to further his goals of becoming a more productive member of the community. During his time in BOP custody, Mr. Bender completed a fourteen-week drug and alcohol program and a twelve-hour drug education program. Upon his release on July 5, 2024, Mr. Bender tested negative for substances three times, first in two separate drug assessments post-release and during his initial intake with U.S. Probation. As he did before trial and until self-surrendering, Mr. Bender has remained in 100 percent compliance with his release conditions since his release pending appeal. He also completed his term of supervision for his Virginia probation sentence and has resumed working. He also just obtained a Project Manager Certificate from the International Association of Professional Career College.

By serving approximately twelve months in BOP custody, Mr. Bender has already served the statutory maximum (and the top of the guidelines range) for his misdemeanor convictions. *See* Sent. Tr. at 37:23-38:02; D.E. 61 at 11. Indeed, Mr. Bender served more time than he would have if he had been sentenced to twelve months at the outset, as he would have been released on First Step Act credits or placed in a halfway house much earlier than July 5, 2024. Moreover, this Court has already agreed that stacking Mr. Bender's misdemeanor sentences would be completely inappropriate. *See* D.E. 61 at 12 ("While possible, imposing consecutive sentences on the five misdemeanors would be a departure from both default practice under federal law . . . and the position advanced by the government and adopted by this Court at defendant's sentencing in the instant case, where the government did not seek consecutive terms of imprisonment . . . resulting in an order to concurrent terms of imprisonment on all Counts."). Additionally, while Mr. Bender's appeal was pending, his guidelines decreased from the guidelines applicable at sentencing. *See* D.E. 161 at 3 n.1.

Years before he agreed to proceed with a stipulated trial, Mr. Bender offered to plead guilty to multiple misdemeanor offenses, and even agreed to certain jail time as part of a plea resolution. The Government declined to let go of the felony obstruction charge, so Mr. Bender opted for a stipulated trial thereby preserving his ability to challenge the constitutionality of the felony obstruction charge. Ultimately, that challenge was successful. Even without the benefit of this hindsight, however, it shocks any belief that this Court would sentence Mr. Bender to the statutory maximum for his misdemeanor convictions, where Mr. Bender accepted responsibility; cooperated with law enforcement (leading to the arrest of his codefendant); remained in 100 percent compliance with his release conditions; turned his life around; and where U.S. Probation recommended a variance under the Guidelines given his mental cognitive related issues.

All in all, Mr. Bender has served more than enough time and suffered sufficient consequences to accomplish the goals of sentencing and to pay the price to society for his misdemeanor conduct. If he was not released in July, Mr. Bender would have completed his full twenty-one month sentence this month under BOP time calculations.

## CONCLUSION

For all of the foregoing reasons, Mr. Bender respectfully submits that the mandate from the D.C. Circuit permits, on remand, resentencing on Mr. Bender's non-vacated misdemeanor convictions on Counts Two through Six of the Indictment. For the reasons outlined above, and such others as may be presented at the further proceedings regarding resentencing, Mr. Bender respectfully requests that the Court impose a sentence of time served.

Dated: October 1, 2024                                         Respectfully submitted,

       /s/ Christopher Macchiaroli
Christopher Macchiaroli (D.C. Bar No. 491825)
Silverman, Thompson, Slutkin & White LLC
1775 I Street, NW, Suite 1150
Washington, D.C. 20006
Telephone: (202) 539-2444
Facsimile:  (410) 547-2432
Email: cmacchiaroli@silvermanthompson.com

       /s/ Emma J. Mulford
Emma J. Mulford (Bar No. MD0146)
Silverman, Thompson, Slutkin & White LLC
400 East Pratt Street, Suite 900
Baltimore, MD 21202
Telephone: (410) 385-6249
Facsimile:  (410) 547-2432
Email: emulford@silvermanthompson.com

*Counsel for Defendant Luke Wessley Bender*