**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 21-CR-508(1) (BAH)** |
| **LUKE WESSLEY BENDER,** | |
| **Defendant.** | |

**GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully requests that this Court resentence defendant Luke Wessley Bender to 21 months of imprisonment, three years of supervised release, $2,000 in restitution, and the mandatory special assessment of $80. With the exception of a lower special assessment, this is the same sentence the Court imposed previously. *See* ECF No. 132. The requested 21-month sentence represents an upward variance from the advisory amended guidelines range of 4 to 10 months, but the sentence remains appropriate given the Court's prior findings regarding the serious nature of Bender's conduct on January 6, combined with his criminal history.

### I.      FACTUAL BACKGROUND

The government incorporates the factual background from its previously filed Sentencing Memorandum. *See* ECF No. 115 at 3–17. The background includes a detailed description of Bender's conduct before, on, and after January 6, 2021, including his anticipation of and planning for violence and his presence on the Senate Floor and dais.

### II.     THE CHARGES, STIPULATED TRIAL, AND SENTENCING

On August 4, 2021, a federal grand jury returned an indictment charging Bender with six counts: Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512(c)(2) (Count One);

1

Entering and Remaining in a Restricted Building, in violation of 18 U.S.C. § 1752(a)(1) (Count

Two); Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18

U.S.C. § 1752(a)(2) (Count Three); Entering and Remaining on the Floor of Congress, in violation

of 40 U.S.C. § 5104(e)(2)(A) (Count Four); Disorderly Conduct in a Capitol Building, in violation

of 40 U.S.C. § 5104(e)(2)(D) (Count Five); and Parading, Demonstrating, or Picketing in a Capitol

Building, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count Six). *See* ECF No. 7. On December 7,

2022, following a stipulated trial at which Bender admitted an extensive factual basis supporting

his conviction, this Court convicted him of all those charges. *See* ECF No. 95.

On April 20, 2023, this Court sentenced Bender to 21 months incarceration, followed by

three years' supervised release, along with $2,000 in restitution and a mandatory special

assessment of $180. *See* ECF No. 132. In pronouncing its sentence, the Court emphasized the

seriousness of the events of January 6 and how Bender's and his codefendant's conduct stood apart

from most other January 6 defendants:

> [They] are not defendants who simply walked in, walked around, and walked out
> of the Capitol Building during their 25 minutes unlawfully inside the Capitol
> Building. This really underestimates and understates the seriousness of the offense
> conduct to my mind. They are among the very few rioters who went and breached
> the Senate Chamber. And they didn't just walk into the Senate Chamber, see a
> "members only" sign, turn around and walk out. You can see on the videotapes,
> even in this case, that there were some people who went in and went: Whoa, look
> where we are, oh, my goodness, then turned around and walked out. Not these
> defendants. They walked in, and they spent some time there. They walked all
> around the Senate Chamber. They looked through papers on the Senate Chamber
> floor. This . . . is one of the more sensitive spaces in the Capitol. This differentiates
> their offense conduct from 90 percent of the defendants connected to the January 6
> riot at the U.S. Capitol.

Sent. Tr. at 104–105. The Court added that "less than an hour before [Bender, his co-defendant,]

and others had barged into the Senate Chamber, senators were in that very room certifying the

2020 presidential election. The Vice Present was sitting in the chair at the dais, where [Bender and

2

his co-defendant] were." *Id.* at 107. The Court also stressed the fact that Bender had planned in advance to go to the Capitol building and, as illustrated by the photos and videos he posted, which eagerly anticipated potential political violence. *Id.* at 105.

### III.    POST-SENTENCING LITIGATION

On March 6, 2024, in light of the Supreme Court's grant of certiorari in *United States v. Fischer*, 64 F.4th 329 (D.C. Cir. 2023), *cert granted*, 217 L. Ed. 2d 285 (Dec. 13, 2023), the Court granted Bender's motion for release pending appeal. It is the government's understanding that, as ordered by the Court, Bender was released from custody of the U.S. Bureau of Prisons on July 7, 2024, approximately one year after his self-surrender.

On June 28, 2024, the Supreme Court issued its opinion in *Fischer v. United States*, 603 U.S. 480 (2024), which narrowed the application 18 U.S.C. § 1512(c)(2). In light of *Fischer*, on November 13, 2024, the Court vacated Bender's 18 U.S.C. § 1512(c)(2) conviction. The government now moves to dismiss Bender's felony § 1512(c)(2) conviction and proceed to resentencing on the remaining five counts.

### IV.    STATUTORY PENALTIES

Bender now faces sentencing on the six undisturbed convictions. The maximum terms of incarceration for each count are:

| Count | Statute | Maximum Term of Imprisonment |
|---|---|---|
| 2 | 18 U.S.C. § 1752(a)(1) | 1 year |
| 3 | 18 U.S.C. § 1752(a)(2) | 1 year |
| 4 | 40 U.S.C. § 5104(e)(2)(B) | 6 months |
| 5 | 40 U.S.C. § 5104(e)(2)(D) | 6 months |
| 6 | 40 U.S.C. § 5104(e)(2)(G) | 6 months |

For the Class A misdemeanors—Counts Two and Three—Bender also faces a maximum one-year term of supervised release, a fine of up to $100,000, and a mandatory special assessment

of $25 per count. For the Class B misdemeanors—Counts Four, Five, and Six—Bender also faces

a fine of up to $5,000, and a mandatory special assessment of $10.

## V.      THE UPDATED SENTENCING GUIDELINES AND GUIDELINES ANALYSIS

Following dismissal of Count One, Bender's g amended sentencing calculations are:

Count Two: 18 U.S.C. § 1752(a)(1)

| | | |
|---|---|---|
| U.S.S.G. § 2B2.3(a) | Base Offense Level | 4 |
| U.S.S.G. § 2B2.3(b)(1)(A)(vii) | Special Offense Characteristic | |
| | (Restricted Building or Grounds) | +2 |
| | **Total** | **6** |

Count Three: 18 U.S.C. § 1752(a)(2)

| | | |
|---|---|---|
| U.S.S.G. § 2A2.4(a) | Base Offense Level | 10 |
| | **Total** | **10** |

Counts Four, Five, and Six:        Class B misdemeanors to which the Sentencing Guidelines do not apply. *See* 40 U.S.C. § 5109(b); 18 U.S.C. § 3559(a)(7); U.S.S.G. § 1B1.9.

Under U.S.S.G. §3D1.2(a) and (c), "closely related counts" group. Counts One and Two

comprise a single group under U.S.S.G. §3D1.2(a) and (b) because the victim of each count is

Congress. Under U.S.S.G. §3D1.3(a), the offense level for a group of closely related counts is the

highest offense level of the counts in each group. The highest offense level is 10 (for Count Three).

Therefore, the combined offense level for the group is 10. And with a three-point reduction for

acceptance of responsibility under U.S.S.G. § 3E1.1, Bender's total combined offense level is 7.

The U.S. Probation Office previously calculated Bender's criminal history as Category III,

which is not disputed and has not changed since the sentencing hearing. PSR ¶ 71. Accordingly,

Bender's corresponding post-*Fischer* Guidelines range is 4 to 10 months' imprisonment.

## VI.     THE SERIOUSNESS OF THE CRIMES – DEPARTURES AND VARIANCES

After determining Bender's Guidelines range, the Court then must consider any departures

or variances. *See* U.S.S.G. § 1B1.1(a)–(c). Because Bender's Guidelines range does not capture

the unprecedented and uniquely harmful nature of his crimes, which struck at the heart of our democracy and the rule of law, the government respectfully requests that the Court depart or vary upwards from the top of the Guidelines range.

Following *Fischer*, the Court vacated Bender's conviction under Count One, but that vacatur, as the Court has already recognized, does not lessen the severity of his crimes or their potential impact on the rule of law. Bender was an avid and willing participant in an unprecedented crime. He joined a mob that threatened the lives of legislators and their staff, interrupted of the certification of the 2020 Electoral College vote count, injured more than one hundred police officers, and caused more than 2.9 million dollars in losses. His offense targeted the peaceful transfer of power, an essential government function, and one of the foundational principles of our democracy. Like every member of the mob, Bender "endanger[ed] our democratic processes and temporarily derail[ed] Congress's constitutional work." *United States v. Brock*, 94 F.4th 39, 59 (D.C. Cir. 2024). As Judge McFadden put it to another rioter, "[Y]ou and your fellow rioters were responsible for substantially interfering with the certification, causing a multiple-hour delay, numerous law enforcement injuries and the expenditure of extensive resources." *United States v. Hale-Cusanelli*, 21-cr-37 (TNM), Sent. Tr. 9/22/22 at 86–87. Moreover, as this Court recognized at Bender's initial sentencing, Bender's conduct—namely, his presence in the Senate Chamber and his rifling through paper's on the Senate floor, and his present on the dais—differentiates his actions from "90 percent of the defendants connected to the January 6 riot at the U.S. Capitol." Sent. Tr. at 105.

But nothing in Bender's Guidelines calculation reflects these facts. Bender would face the same offense level if his crimes had not endangered the democratic process or interfered with the

peaceful transfer of power.[1] There is no specific offense characteristic in the Guidelines for attacking democracy or abandoning the rule of law. "And simply saying, yeah, I know I trespassed, I trespassed, that's not really capturing the impact of what that day meant when all of those members of Congress met there to fulfill their constitutional duty." *United States v. Calhoun*, 21-CR-116 (DLF), Sent. Tr. at 85. So a sentence within Bender's Guidelines range here would not "reflect the seriousness of the offense," "promote respect for the law," or "provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A).

The Guidelines expressly state that an upward departure is warranted where a case presents a circumstance that "may not have been adequately taken into consideration in determining the applicable guideline range" or that "the Commission has not identified in the guidelines but that nevertheless is relevant to determining the appropriate sentence." U.S.S.G. § 5K2.0(a)(2). The Guidelines also provide that a departure is warranted when an offense results in "a significant disruption of a governmental function" and the Guidelines do not reflect the appropriate punishment for the offense. U.S.S.G. § 5K2.7.[2] In such circumstances, "the court may increase the sentence above the authorized guideline range to [1] reflect the nature and extent of the disruption and [2] the importance of the governmental function affected." *Id*.

It is not hyperbole to call what happened on January 6 a crime of historic magnitude. As

---

[1] The D.C. Circuit's holding in *United States v. Brock*, 94 F.4th 39 (D.C. Cir. 2024), finding that certain sentencing enhancements did not apply to the Congress's counting and certification of the electoral college votes, despite acknowledging that interference with this process "no doubt endanger[ed] our democratic process and temporarily derail[ed] Congress's constitutional work" demonstrates that the Sentencing Commission failed to anticipate anything like the January 6 riot when drafting the Guidelines. And *Fischer* demonstrates that even the criminal code lacks the appropriate tools to fully address the crimes of January 6. *See Fischer*, 603 at 506 (Barrett, J., dissenting) ("Who could blame Congress for [its] failure of imagination?").

[2] This guideline does not require the government to establish a direct link between the defendant's misconduct and the alleged disruption, nor does it "require that the disruption be of any particular type or consequence." *See United States v. Saani*, 650 F.3d 761, 765–66, 771 (D.C. Cir. 2011).

judges of this district have repeatedly and clearly stated, January 6 was an unprecedented disruption of the nation's most sacred function—conducing the peaceful transfer of power. "The events that occurred at the Capitol on January 6th will be in the history books that our children read, our children's children read and their children's children read. It's part of the history of this nation, and it's a stain on the history of this nation." *United States v. Miller*, 21-CR-75 (RDM) Sent. Tr., at 67.

But just as the history books will describe the crimes of January 6, so will they tell the story of how this nation responded. History is not just the measure of events and the dates on which they occurred; history is the measure of how a society and its leaders choose to respond to those events to provide security, prosperity, and freedom to its posterity and, in doing so, form a more perfect union. Future generations will rightly ask what this generation and those who have filled these courtrooms did to prevent another such attack on our democracy from occurring. The damage done to this country on January 6 must be reflected in the sentences imposed on those who caused the damage—it must not be treated as just another crime because it was not. *See United States v. Wyatt*, 23-CR-215 (RDM), Sent. Tr. at 44 ("He just wanted to delay the certification. He wanted the election certification stopped. That's chilling to me. I mean, that is not a minor thing, in that through—through acts of violence and intimidation, we're going to stop the most sacred day in our democracy from occurring, which is the certification of the election, because we want some more time to try and make our case because the dozens and dozens of courts that have considered the issue and have concluded there was not a problem with the election weren't enough, and because I want someone else to take another look at this. And so, therefore, I'm going to go down to the Capitol and I'm going to stop the certification of the election from occurring. So I think that the offense here, to my mind, is one of enormous gravity."); *United States v. Fitzsimons*, 21-CR-

158 (RC), Sent. Tr., at 85–86 ("The security breach forced lawmakers to hide inside the House gallery until they could be evacuated to undisclosed locations. In short, the rioters' actions threatened the peaceful transfer of power, a direct attack on our nation's democracy.").

Indeed, even before *Fischer*, judges of this Court gave significant upward departures and/or variances in January 6 cases when they found the advisory Guideline range inadequate. *See, e.g.*, *United States v. Hale-Cusanelli*, 21-CR-37 (TNM), 9/22/22 Sent. Tr.; *United States v. Christian Secor*, 21-CR-157 (TNM), 10/19/22 Sent. Tr.; *United States v. Hunter and Kevin Seefried*, 21-CR-28 (TNM). 10/24/22 Sent. Tr.; *United States v. William Watson*, 21-CR-513 (RBW), 3/9/23 Sent. Tr.; *United States v. Riley Williams*, 21-CR-618 (ABJ), 3/23/23 Sent. Tr.; *United States v. Hatchet Speed*, 22-CR-244 (TNM), 5/8/23 Sent. Tr.

And several judges of this Court, including this one, have upwardly departed in January 6 cases precisely because in a post-*Fischer* world, the advisory Guideline range did not adequately take into account all of the relevant circumstances. *See United States v. Eicher*, 22-cr-38 (BAH), Sent. Tr. 9/15/23 at 50 (applying § 5K2.7 because the defendant "join[ed] a mob, in the center of the melee, and through the sheer numbers and aggressive conduct towards police, breached the Capitol resulting in stopping the legitimate business of Congress for hours"); *United States v. Black*, 21-CR-127-ABJ, Sent. Tr. 5/16/23 at 27 (applying an upward departure pursuant to § 5K2.7 for a January 6 rioter).

In *United States v. Sparks*, 21-CR-87 (TJK), Judge Kelly sentenced a defendant convicted of violating both 18 U.S.C. § 1512(c)(2) and 18 U.S.C. § 231. Prior to sentencing, the government successfully moved to dismiss the § 1512(c)(2) count in light of *Fischer*. Sparks then faced an advisory guideline range of 15-21 months. Judge Kelly found that despite the dismissal of the § 1512(c)(2) count, the Spark's conduct still included "an intent to obstruct or interfere with that

proceeding, that important constitutional proceeding" which the court found to be "pretty dark behavior" which "posed a threat to whether our constitutional process will proceed or whether a mob would interfere with that process." *Sparks* Sent. Tr., at 87-88. Judge Kelly found that the "typical person convicted of [18 U.S.C. § 231] engaged in nothing at all like the attack on the Capitol and the certification." *Id*. at 94-95. Because Sparks' advisory guideline range was driven by the § 231 conviction, that range did not "account for the defendant's intent to obstruct, not just law enforcement officers doing their duty under that statute, but a proceeding, or for the purposes of [U.S.S.G. §] 5K2.7, a governmental function. And not any proceeding, but one foundational to our country's governance." *Id.* at 93. Judge Kelly found Sparks' intent to "interfere or obstruct with the electoral college vote certification . . . plays an important role in explaining why" Sparks' advisory guideline range did not fully account for his criminal conduct. *Id.* at 94. Accordingly, Judge Kelly found a significant upward departure was warranted under both U.S.S.G. §§ 5K2.7 and § 5K2.21.I In the alternative a variance of equal amount was warranted under the § 3553(a) factors, and sentenced Sparks to 53 months of imprisonment.

Similarly, in *United States v. Robertson*, 21-CR-34 (CRC), Judge Cooper resentenced a defendant after dismissal of a § 1512(c)(2) conviction post-*Fischer*. Without that conviction, the court determined that a new advisory guideline range of 37 to 46 months applied. *See Robertson* Sent. Tr., at 59. But the court also found that an upward departure was appropriate pursuant to U.S.S.G. § 5K2.7, because Robertson's conduct "resulted in a significant disruption of a governmental function, namely halting of the certification . . . and that is so regardless of whether Section 1512(c) applies." *Id*. at 61. The court also found an upward departure appropriate under U.S.S.G. § 5K2.0 because Robertson's conduct was "more harmful or egregious than the typical case represented by the otherwise applicable guideline range." *Id*. After considering the § 3553(a)

9

factors, Judge Cooper sentenced Robertson to 72 months of imprisonment.

Likewise, in *United States v. Dunfee*, 23-CR-36 (RBW), Judge Walton sentenced a defendant on a § 231 conviction and a misdemeanor, after his § 1512(c)(2) conviction was dismissed in light of *Fischer*. Judge Walton found an upward departure was warranted under U.S.S.G. § 5K2.7, because Dunfee's actions contributed to and resulted in a significant disruption of the certification of the electoral college vote. Moreover, noting that "the Sentencing Commission did not contemplate the circumstances that occurred on January 6," the court also found that a departure was warranted under U.S.S.G. § 5K2.0(a)(2) because Dunfee's criminal conduct related to "the attempt by a large number of individuals, including the defendant, to stop the peaceful transfer of power." *See United States v. Dunfee*, 23-CR-36 (RBW), ECF No. 90, at 2. From an advisory range of 18-24 months, the court sentenced Dunfee to 30 months of imprisonment.

Most recently, in *United States v. Oliveras*, 21-CR-738 (BAH), this Court sentenced a defendant on a § 231(a)(3) conviction, a § 111(a)(1) conviction, and four misdemeanors, after his § 1512(c)(2) conviction was dismissed following *Fischer*. This Court found that an upward departure was warranted under U.S.S.G. § 5K2.7 (Disruption of Governmental Function) because

> after *Fischer*, with the dismissal of [the defendant's] 1512(c)(2) conviction, none of the conduct that goes into determining defendant's sentencing guidelines reflect his intent to engage in political violence that poses such a threat to our American democracy… His intent to obstruct Congress in the Electoral College certification by violence, if necessary, go above and beyond what any of his current convictions now take into account.

*Oliveras*, 21-cr-738 (BAH), Sent. Tr. at p. 49. This Court noted that "[i]n assessing the extent of the departure, review of how the guidelines for obstruction of an official proceeding at [U.S.S.G. §] 2J1.2 would have applied to defendant [pre-*Brock*] provide a general guide… [and] an upward departure within that range is appropriate." *Id.* at 49-50. The court also noted that it "would impose

the same sentence with . . . an upward variance for the same reasons that are outlined in § 5K2.7 and consideration of the 3553(a) factors." *Id.* at 97. From an advisory Guidelines range of 37-46 months' imprisonment, the court sentenced Oliveras to 60 months of imprisonment.

Because the seriousness of Bender's crime is not adequately captured by the applicable Guideline, an upward departure is appropriate here as well. If the Court declines to depart, an upward variance is warranted. An upward variance is appropriate when "the defendant's conduct was more harmful or egregious than the typical case represented by the relevant Sentencing Guidelines range." *United States v. Murray*, 897 F.3d 298, 308–09 (D.C. Cir. 2018) (cleaned up). While the Supreme Court's decision in *Fischer* has changed Bender's advisory Guideline range, "*Fischer* does not dictate the Court's application of the 18 U.S.C. 3553(a) factors [because] the Court may still consider [defendant's] serious conduct on January 6th, 2021 in its entirety. To reduce [defendant's] sentence . . . would require this Court to take a drastically different view of [defendant's] conduct." *United States v. Hostetter*, 21-CR-392 (RCL), ECF 507, Sent. Tr. at 4-5 (cleaned up).  Indeed, "*Fischer* does not mean that I cannot consider at sentencing evidence that establishes that the defendant intended to obstruct Congress' certification of the electoral vote in determining whether . . . the resulting guideline range fully accounts for the criminal conduct." *Sparks* Sentencing Tr. at 95. *See also United States v. Kelly*, 21-CR-708 (RCL), ECF 151, Sent. Tr. at 5 ("Nothing about *Fischer* or any hypothetical outcome of [defendant's] appeal bears directly on the severity of his conduct on January 6th . . . Likewise, the outcome in *Fischer* would not dictate the Court's application of the sentencing factors prescribed in 18 U.S.C. § 3553(a)"); *United States v. Jensen*, 21-CR-6-TJK, Sent. Tr. at 16 ("given the importance and the significance of the proceeding of certifying the Electoral College votes, I would vary upward—even if this [sentencing enhancement] didn't apply, I would vary upward when considering the nature of the

11

offense.")

In past sentencings, this court has made clear its view that the riot "was a chilling first in our history, that the peaceful transition of power, after a democrat election, was totally disrupted. And this is not a garden-variety episode of unlawful entry, disorderly conduct, merely being unlawfully present or trespassing in a sensitive place like the Capitol when every member of Congress is there for a Joint Session and the Vice President is there. This was a dangerous first where the peaceful transition to a new presidential administration was disrupted." *United States v. Todd III*, 22-CR-166 (BAH), Trial Tr. at 92. Those were not merely empty words—they were a recognition of the seriousness and unprecedented nature of the riot.

Also unprecedented is the need for January 6 sentences to promote respect for the law and deter future crime. *See* 18 U.S.C. § 3553(a)(2)(A), (B). The January 6 rioters went far beyond merely breaking the law. "There is a difference between breaking the law and rejecting the rule of law." *See* Opening Remarks, January 6 Select Committee (Rep. Kinzinger).[3]

In addition to departing upwards, other courts have varied upward from the advisory Guidelines range specifically because of the unique and serious nature of the crimes committed on January 6; this Court should do the same. *See United States v. Reffitt,* 21-CR-32 (DLF), Mem. Op. and Order 4/10/24 at 10–11 (upward variance would be justified because "as other judges in this district have noted, the proceedings at issue on January 6, 2021 were of much greater significance than run-of-the-mill 'judicial, quasi-judicial, and adjunct investigative proceedings'"); *United States v. Fonticoba*, 21-CR-638 (TJK), Sent. Tr. 1/11/24 at 66–67 (stating that, even if the defendant's § 1512 conviction were invalidated, a significant upward variance was warranted to account for the defendant's intent "to obstruct the proceeding and the nature of the proceeding

---

[3] Available at https://www.cnn.com/2021/07/27/politics/read-kinzinger-remarks-0727/index.html

itself"); *United States v. Secor*, 21-CR-157 (TNM), Sent. Tr. 10/19/22 at 53 ("I believe both the seriousness of the event — you obstructed the certification of an official proceeding — and your particular role in it . . . require a significant upward variance"); *United States v. Hale-Cusanelli*, 21-CR-37 (TNM), Sent. Tr. 9/22/22 at 87 ("I also believe the extensive damage and injuries caused on January 6th with your fellow rioters require additional punishment beyond what my [guideline] calculation allows.").[4]

In this case, an upward variance is warranted because it is necessary to reach an appropriate sentence: the original 21-month term of incarceration imposed by this Court. Pursuant to U.S.S.G. § 5G1.2(d), where the sentence to be imposed exceeds the statutory maximum of any one count, then the remainder of the sentence shall run consecutively, to the extent needed to produce a combined sentence equal to the total punishment.

---

[4] The D.C. Circuit has made clear that it "ordinarily presume[s] a district court imposing an alternative non-guidelines sentence took into account all the factors listed in § 3553(a) and accorded them the appropriate significance." *United States v. Warren*, 700 F.3d 528, 533 (D.C. Cir. 2012) (quoting *United States v. Ayers*, 428 F.3d 312, 315 (D.C. Cir. 2005)). But as recently discussed in *United States v. Iracks*, 2024 WL 3308241 (D.C. Cir. July 5, 2024), for a sentence above the applicable Guidelines range, the Sentencing Reform Act provides that the district court must state "the specific reason for the imposition of a sentence different from that described [in the Guidelines,]" both orally during the sentencing and on a written form appended to the judgment. 18 U.S.C. § 3553(c)(2) (emphasis added). Accordingly, the government requests that the Court make specific findings that this defendant's "conduct was more harmful or egregious than the typical case represented by the relevant Sentencing Guidelines range" and "explain why the otherwise applicable Guidelines calculation 'does not fully account for the described criminal conduct.'" *United States v. Brown*, 892 F.3d 385, 404–05 (D.C. Cir. 2018) (quoting *Brown*, 808 F.3d at 867, 872 (D.C. Cir. 2015)).

## VII.    CONCLUSION

For these reasons, the government recommends that the Court re-impose a sentence of 21 months of imprisonment, three years' supervised release, and $2,000 in restitution. Without Count One, Bender's mandatory special assessment is reduced to $80.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

By:    *s/ Sean P. McCauley*
SEAN P. McCAULEY
Assistant United States Attorney
New York Bar No. 5600523
United States Attorney's Office
For the District of Columbia
601 D Street, NW
Washington, DC 20530
Sean.McCauley@usdoj.gov